# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 50243 | **DATE** | 8/6/2010 |
| **CASE TITLE** | USA vs. Hawkins | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court denies the §2255 motion, denies the request for an evidentiary hearing, and dismisses this cause in its entirety.

*Philip G. Reinhard*

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT - OPINION

    Robert A. Hawkins, a federal prisoner, filed a motion pursuant to 28 U.S.C. § 2255, challenging his convictions and sentence for armed robbery (18 U.S.C. § 1951(a)), using and carrying a firearm in relation to a crime of violence (18 U.S.C. § 924C(1)(A)), and being a felon in possession of a firearm and an armed career criminal (18 U.S.C. §§ 922(g)(1) and 924(e)). The motion raises 16 claims, most of which are based on ineffective assistance of counsel, and also requests an evidentiary hearing. The government has filed a response, and Hawkins has filed a reply.

    Hawkins was found guilty after a jury trial. The evidence at trial established that on March 15, 2004, shortly after midnight, a man wearing a black ski mask, dark gloves, and a dark hooded jacket, robbed at gunpoint the Road Ranger gas station located at the intersection of Illinois 251 and Illinois 173 in Machesney Park, Illinois. The clerk, Jesse Grahn, reported the robbery via 911 immediately after the robber exited the store. Grahn described the robber as being slightly taller than 5' 4" and having a thin build. She also believed he was older based on his voice and gray hair in his eyebrows. The surveillance video at the Road Ranger showed the robber was wearing a dark jacket, black mask, blue jeans, and a gray glove on one hand and a pink glove on the other. The robber made off with about $117 in cash.

    A deputy sheriff, Tom Keegan, was patrolling nearby when he received the dispatch. He proceeded in his squad car with its emergency lights activated toward the Road Ranger south along a frontage road parallel to Illinois 251. He observed a vehicle approaching northbound on the frontage road so he shined his spotlight on it, and it appeared to accelerate. Keegan turned around and followed the vehicle.

    Keegan observed the vehicle stop about three blocks ahead of his squad car. At about the same time that Keegan arrived at the stopped vehicle, another deputy sheriff, Neal Roberts, arrived at that location. The vehicle, a maroon Oldsmobile, was parked next to a mobile home near the Racer's Edge bar along the frontage road. The driver's door was open, but there was no one inside. The deputies heard movement in the woods behind the adjacent mobile home.

    Keegan and other officers established a perimeter around the area in an effort to contain the suspect.

| STATEMENT - OPINION |
|---|

Roberts stayed with the Oldsmobile and located a small handgun on the ground next to the vehicle. One of the officers on the perimeter observed a person, later identified as Hawkins, run from the woods near the mobile home. He gave chase and yelled at the fleeing person to stop. Hawkins climbed two fences but was eventually apprehended and handcuffed about 100- 150 yards from the Oldsmobile. He resisted being taken into custody, swore at the officers, and had a strong odor of an alcoholic beverage on his breath. At the time of his arrest, Hawkins was wearing a brown leather jacket, a black hooded sweatshirt, blue jeans, and tennis shoes. The jacket was torn and had blood on it.

    Other evidence located nearby included a black ski mask on the frontage road between the Road Ranger and the Oldsmobile. An officer searching the wooded area behind the mobile home found a pink glove near the corner of the mobile home next to the Oldsmobile and $113 in cash and a gray glove along a barb wire fence in the same wooded area. An officer also found white fibers on one of the barbs of the fence next to where the $113 was located.

    The Oldsmobile was stolen from an auto repair shop just north of the Road Ranger. Several fingerprints were found in the Oldsmobile, none of which matched Hawkins's prints.

    Shortly after arresting Hawkins, officers took him to the Road Ranger for a show up with Grahn. While Grahn was not "absolutely sure" Hawkins was the robber, she did state that his height, body build, and clothes were all similar to the robber. She also thought the handgun found next to the Oldsmobile was the one used in the robbery.

    Following his arrest, Hawkins was advised of his Miranda rights, waived them, and agreed to speak to officers. Detective Del Pra, while showing Hawkins a surveillance photo of the robber holding a gun to the back of Grahn, asked Hawkins if he intended to shoot the clerk to which Hawkins responded by shaking his head no.

    Officers determined that the gun found next to the Oldsmobile belonged to Frank Jenkins. When officers met with Jenkins at his home, they observed that he had difficulty moving around in his house and that he was unable to walk without the use of a walker. He also appeared to be about 5' 10" to 5' 11" and weighed around 200- 210 pounds. He did not have any gray hair in his eyebrows. While at the Jenkins residence, the officers also seized some mail addressed to Hawkins as well as his wallet.

    There was also additional forensic evidence admitted at the trial. A state police forensic scientist testified the fibers found on the fence were consistent with fibers from the area of a tear in lining of Hawkins's jacket and that those fibers could have come from the jacket. A DNA expert further testified that Hawkins could not be excluded as the source of DNA extracted from the two gloves and ski mask. It was stipulated that none of the hairs recovered from the ski mask matched the hair samples provided by Hawkins but that Hawkins still could have worn the mask and not left any hairs.

    Hawkins filed a direct appeal in which the only issue he raised was whether the show up violated due process. The Court of Appeals held that the show up was neither unduly suggestive nor unreliable and affirmed Hawkins's convictions and sentence on August 28, 2008. United States v. Hawkins, 499 F. 3d 703 (7th Cir. 2008).

    To prevail on an ineffective assistance of counsel claim, a petitioner must prove both: (1) that his counsel's performance was objectively unreasonable; and (2) that he suffered prejudice as a result. Watson v. Anglin, 560 F. 3d 687, 690 (7th Cir. 2009). The focus of the test for prejudice is not simply whether the outcome would have been different, but rather, whether counsel's shortcomings rendered the proceeding fundamentally unfair or unreliable. Gray v. Hardy, 598 F. 3d 324, 331 (7th Cir. 2010). A court may address these issues in the most expedient order, and if it is easier to dispose of a claim based on the lack of prejudice, that course should be followed. Watson, 560 F. 3d at 690. Ineffective assistance of counsel is a single ground for relief no matter how many failings the attorney may have displayed. Peoples v. United States, 403 F. 3d 844, 848 (7th Cir. 2005). Counsel's work must be assessed as a whole, and it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief. Peoples, 403 F. 3d at 848.

Hawkins's first claim of ineffective assistance of trial counsel pertains to the issue of the identification evidence introduced at trial. Any inconsistencies in the identification evidence of the clerk, Grahn, would not have affected the outcome of the trial as the jury had ample independent evidence upon which to conclude that Hawkins was the robber. Additionally, Grahn herself testified that she was not absolutely sure Hawkins was the robber. Further, the government conceded in its closing argument that Grahn did not make a positive identification. The failure of trial counsel to point out any additional inconsistencies in Grahn's identification was not prejudicial.

Hawkins also contends that his trial counsel was ineffective for failing to point out that Hawkins's appearance, particularly his hair color, had changed between the time of his arrest and the trial. This alleged failure was not prejudicial, however, in light of Grahn's equivocal identification and the other substantial evidence of Hawkins's guilt.

Next, Hawkins argues his trial counsel was deficient for failing to challenge Detective Del Pra's testimony that he was wearing a black hooded sweatshirt at the time of his arrest. Specifically, he contends that counsel should have introduced evidence that detectives failed to follow proper inventory procedures related to the clothing seized from him. He also argues that counsel should have introduced video evidence of both the show up at the Road Ranger and at the jail showing that he was not wearing a hooded jacket like the one worn by the robber.

Detective Del Pra testified that Hawkins was wearing a dark brown jacket and black hooded sweatshirt when he was interviewed after his arrest. He further testified that he documented in his report that he seized a black hooded jacket from Hawkins during the initial interview. In light of this testimony, any supposed irregularities in the inventory process, without more, would have had little, if any, impact at trial.

Hawkins further claims that his trial counsel was ineffective for failing to present alibi witnesses. In support of this claim, Hawkins submits affidavits from two proposed witnesses who claim he was with them prior to the robbery. The affidavits further state that Hawkins was in the area for the purpose of recovering his stolen property. He maintains that both witnesses were present and available to testify at his trial.

This claim fails as it was a matter of trial strategy, in light of the ample evidence regarding Hawkins's presence in the area and his incriminating reactions to the police, not to raise a questionable alibi defense. Further, even had the defense been presented, the evidence that refuted it was substantial. Thus, the failure to do so was neither ineffective nor prejudicial.

Hawkins next maintains that trial counsel was ineffective regarding the admission of DNA evidence at his trial. However, the record indicates that trial counsel pursued a vigorous attack on the admission of DNA evidence against Hawkins. As for the failure to request a comparison of the DNA of Frank Jenkins with that found on certain clothing evidence, trial counsel in fact requested a continuance to do so which was denied by the court. Without further specificity, Hawkins has failed to identify how trial counsel was ineffective regarding the DNA evidence.

Hawkins also asserts that his trial counsel was ineffective for failing to impeach the evidence regarding Frank Jenkins. Specifically, he argues that his trial counsel should have introduced evidence of Jenkins's drug use to impeach the evidence that Jenkins legally owned the gun used in the robbery. He further asserts that evidence should have been introduced to show that Jenkins did not use a walker in March of 2004.

Trial counsel was not ineffective as to Jenkins's purported drug use because Jenkins never testified at trial (he was deceased). Further, the legality of Jenkins's ownership of the gun was not relevant.

Nor was trial counsel ineffective in failing to have a witness testify that Jenkins did not use a walker in March of 2004. This is so because Jenkins did not remotely meet the physical description of the robber. Additionally, Agent Ivancich testified that he observed that when he met with Jenkins at Jenkins's home that he took a long time to answer the door and it appeared that the reason was because he was very slow in moving around the house and that he was unable to walk without the assistance of a walker. Whether he actually used a walker or not would not have materially detracted from that evidence. Thus, no

ineffectiveness has been shown in this regard.

Hawkins also contends that trial counsel was ineffective for failing to introduce statements against interest by Jenkins. Specifically, Hawkins points to statements Jenkins made to his wife and another person that the gun belonged to him, that the evidence used against Hawkins had Jenkins's DNA on it, and that the ski mask was actually a stocking cap with eye holes cut out of it.

Hawkins has not established the necessary prejudice under Strickland as to these asserted deficiencies. Jenkins did not match the physical description of the robber. Further, the statement regarding the gun, the DNA, and the ski mask was not inconsistent with the government's theory that Hawkins had stayed with Jenkins and had taken the various items used in the robbery from Jenkins's home.

While Hawkins argues that trial counsel had a conflict of interest which prevented him from calling Jenkins's wife to testify regarding the statement, trial counsel in fact sought to introduce the statements but the court prohibited him from doing so. Trial counsel was not ineffective in this regard either. The bottom line is that the failure to introduce Jenkins's purported statement did not affect the outcome of the trial.

Hawkins further claims that trial counsel was ineffective because he never discussed the issue of whether Hawkins should testify. He also argues that trial counsel was ineffective when he waived his right to testify by failing to give proper notice of his alibi defense which resulted in the court barring that defense, including his testimony thereon.

These assertions are belied by the record. The court specifically advised Hawkins that he had a right to testify and that it was his personal choice whether to do so. Hawkins stated to the court that he understood that right. Hawkins did not indicate to the court, however, that he wanted to testify. There is no record support for the ineffectiveness claim in this regard.

As for the alibi defense, there was significant evidence of Hawkins's guilt such that the proposed alibi defense would not have changed the outcome of the trial. First, the affidavits merely indicate that Hawkins was with the witnesses on the night of the robbery, but they do not necessarily preclude his being at the Road Ranger at the time of the robbery. Second, the evidence that Hawkins was in the area in an effort to recover his property does not necessarily preclude his having committed the robbery and is inconsistent with his behavior when confronted by the police. He has not shown the prejudicial impact necessary to succeed on a claim of ineffective assistance of counsel.

Hawkins argues that trial counsel was ineffective for failing to request a jury instruction on "third party guilt" and one on "mistaken identity." The failure to seek such instructions was of no consequence to the outcome of the trial as the given instructions required the jury to find Hawkins guilty based only on proof beyond a reasonable doubt. The given instructions did not prevent Hawkins from proving and arguing that he was not the robber and that someone else was.

Hawkins further argues that trial counsel ineffectively failed to object to flight being introduced as evidence of guilt. This claim fails because evidence of flight was properly introduced in this case. Evidence of flight may be admissible to show consciousness of guilt, as well as guilt itself. United States v. Skoczen, 405 F. 3d 537, 548 (7th Cir. 2005). The probative value of such evidence depends upon the degree of confidence with which the following four inferences can be drawn: (1) from defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. Skoczen, 405 F. 3d at 548.

In this case, there is ample evidence to support the ultimate inference that Hawkins fled from the police because he robbed the Road Ranger. Although flight alone cannot be the only evidence to show guilt, see Skoczen, 405 F. 3d at 548, in this case there was far more. Accordingly, the failure to object to such evidence was not ineffectiveness on trial counsel's part.

Hawkins additionally claims ineffectiveness based on trial counsel's stipulation to a government witness's proposed testimony that just because hairs found in the ski mask did not match Hawkins's hair did not mean that Hawkins had not worn the mask. This contention fails because the stipulation also included

testimony that the expert compared hairs found in the mask with those of Hawkins and they did not match. This obviously benefitted Hawkins. Further, there was no prejudice as it is an obvious proposition based on common knowledge that just because hair of a particular suspect is not found on a clothing item does not necessarily mean the suspect did not have contact with or wear that item.[1] Accordingly, this argument fails to establish ineffective assistance of counsel.

Hawkins next contends that trial counsel was ineffective during closing argument. This claim fails because the record shows that trial counsel presented a thorough closing argument that effectively attacked the government's case in numerous respects. Further, considering the strong case against Hawkins, it is highly unlikely that a different closing argument would have changed the outcome.

Hawkins also argues that his trial counsel was ineffective at sentencing because he failed to object to his being subjected to both a mandatory minimum sentence and a consecutive sentence, and because he failed to challenge the validity of Hawkins's prior state-court convictions. These claims both fail under established Seventh Circuit law, and Hawkins effectively concedes as much in his reply brief.

Hawkins also raises several claims of ineffective assistance of appellate counsel. To succeed in showing that appellate counsel was ineffective, a petitioner must meet the test of Strickland. Johnson v. United States, 2008 WL 4452342, * 7 (N.D. Ind. 2008). Although the test was developed in the trial context, it is also used for claims of ineffective assistance of appellate counsel. Gray v. Greer, 800 F. 2d 644, 646 (7th Cir. 1986). The district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Gray, 800 F. 2d at 646. Significant issues that could have been raised are then compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome. Gray, 800 F. 2d at 646. An appellate lawyer cannot be deemed ineffective just because he did not raise every conceivable issue on appeal. Page v. United States, 884 F. 2d 300, 302 (7th Cir. 1989). The Supreme Court has stated that appellate counsel need not raise every non-frivolous claim, but rather, may select from among them in order to maximize the likelihood of success on appeal. Smith v. Robbins, 528 U.S. 259, 288 (2000).

In the present case, appellate counsel raised the singular issue that admission of the show up identification violated Hawkins's due process rights. Hawkins argues that this was ineffective because appellate counsel did not raise an issue regarding whether Grahn described the robber as having gray hair in his eyebrows after the show up. The failure to raise this particular issue was not ineffective as it was not significant in light of all the other evidence at trial and even if it was it was not stronger than the issue actually raised.

Hawkins further contends that appellate counsel was ineffective for failing to raise an issue regarding his post-arrest statements and actions. This issue would have been considered waived as it was not raised in the trial court. The only way it could have been presented would have been to raise it as a matter of ineffective assistance of counsel which would more properly be brought via a motion under § 2255. If appellate counsel had done so it likely would have precluded the issue from now being raised in this motion under § 2255 where it can be fully examined. Thus, it was not ineffective assistance of appellate counsel not to have raised the issue on direct appeal.

Hawkins also argues the ineffectiveness of his appellate counsel for failing to appeal the court's rulings regarding the DNA evidence. Such an issue was not significant and obvious in light of the credentials of the government expert and the late notice regarding the proposed testimony of Savage on behalf of Hawkins. Moreover, the failure of Savage to be able to testify about the insufficiency of material for DNA testing would not have affected the outcome of the appeal in light of the strength of the evidence against Hawkins.

Hawkins's finally asserts that appellate counsel was ineffective for failing to argue that the court erred when it denied him a continuance to obtain Jenkins DNA for testing and comparison. It was not ineffective for appellate counsel not to have raised this issue in light of the substantial evidence that Jenkins could not have been the robber. The issue was simply insignificant and also weaker than the issue that was raised.

## STATEMENT - OPINION

    The court also rejects Hawkins's claim that the accumulative effect of the various asserted errors of counsel denied him the effective assistance of counsel. None of the individual errors rise to the level of ineffective assistance of counsel. Moreover, the errors, even when viewed collectively, do not show prejudice in light of the substantial evidence of Hawkins's guilt.

    Apart from his ineffective assistance of counsel claims, Hawkins contends that the court denied him his Sixth Amendment right to counsel when it refused to appoint separate counsel at the hearing on the motion to withdraw by trial counsel. This claim is barred because it could have been raised on direct appeal but was not. To the extent Hawkins might argue that the failure to raise the issue on direct appeal was the result of the ineffectiveness of appellate counsel, such claim fails as he has not shown that trial counsel was actually ineffective in his representation.

    Finally, there are no material factual issues that warrant an evidentiary hearing. Based on the facts, exhibits, and prior proceedings, it is evident that Hawkins is not entitled to relief. Thus, the motion for an evidentiary hearing is denied.

    For the foregoing reasons, the court denies the § 2255 motion as to all claims, denies the motion for an evidentiary hearing, and dismisses this cause in its entirety.

---

1. Such a contrary argument perhaps reflects the effect of television shows such as CSI which project an impression that all crimes are solvable based on forensic evidence and that somehow there is a problem with the proofs in a case if they lack some scientific basis. The only thing that the absence of Hawkins's hair in the mask definitively shows is that his hair was not in the mask. It does not require scientific opinion to conclude that he could still have worn the mask and simply not left any hair behind.